# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| Erik Landers, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> I Fund Daily LLC d/b/a Lendtek, <br><br> Defendant. | Case No.: <br><br> **CLASS ACTION** <br><br> **CLASS ACTION COMPLAINT FOR:** <br><br> (1) Telephone Consumer Protection Act, 47 U.S.C. § 227; and <br> (2) Florida Telephone Solicitation Act, Fla. Stat. § 501.059 <br><br> **JURY TRIAL DEMANDED** |

## INTRODUCTION

1. For three days in January of 2024, Plaintiff Erik Landers, received an endless barrage of text messages from Defendant I Fund Daily LLC d/b/a Lendtek. Thirty-five text messages later—and after repeated pleas by Mr. Landers for them to stop—Defendant stopped texting him. This brief reprieve only lasted until late February of 2024, at which point, Defendant resumed its unlawful telemarketing campaign towards Mr. Landers.

2. Plaintiff, Erik Landers, brings this action against Defendant I Fund Daily LLC d/b/a Lendtek, to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227; and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

## NATURE OF THE ACTION

3. This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, (the "TCPA") and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

4. Defendant is a financial services company that focuses on business financing and small business loans. To promote its services, Defendant engages in unsolicited marketing, harming thousands of consumers in the process.

5. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of himself and members of the class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

6. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA. Jurisdiction is also proper

under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each text in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

7. Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within Florida's Middle District and, on information and belief, Defendant has sent the same text messages complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the Middle District of Florida.

## PARTIES

8. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Orange County, Florida.

9. Defendant is a New York Limited Liability Company whose principal office is located at 405 Lexington Avenue. 9th floor, New York, New York 10174. Defendant directs, markets, and provides its business activities throughout the State of Florida.

## THE TCPA

10. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

11. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

12. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

13. The TCPA states that the regulations required by paragraph (2) may require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations. 47 U.S.C. § 227(c)(3). The TCPA further states that it is prohibited to "any person from making transmitting a telephone solicitation to the telephone number of any subscriber included in such database." 47 U.S.C. § 227(c)(3)(F).

14. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—

(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

15. (C) both such actions. 47 U.S.C § 227(c)(5).

16. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because,

as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

17. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express ***written*** consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

18. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

19. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

20. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

21. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

22. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142

(2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future. Id.*

23. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

24. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

25. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing

that it obtained Plaintiff's prior express consent before sending him the *text message*). (emphasis added).

26. United States Court of Appeals for the Eleventh Circuit found that a single, unwanted telephone call or text is enough to satisfy Article III standing, pursuant to the TCPA. *Drazen v. Pinto*, 74 F.4th 1336, 1339 (11th Cir. 2023). The Court noted that "the harm associated with [one] unwanted text message shares a close relationship with the harm underlying the tort of intrusion upon seclusion." *Id*. at 1345. Because "[b]oth harms represent 'an intrusion into peace and quiet in a realm that is private and personal'…the harms are similar in kind, and the receipt of an unwanted text message causes a concrete injury." *Id*. (internal citation omitted).

27. Recently, the FCC closed the "lead generator loophole by requiring that texters and callers get written consumer consent for robocalls or robotexts from one seller at a time, and thus prohibit abuse off consumer consent by comparison shopping and other websites." See *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC-23-107, ¶ 14 (2023). The FCC "now make[s] it unequivocally clear that texters and callers must obtain a consumer's prior express consent to robocall or robotext the consumer

soliciting their business…this requirement applies a single seller at a time[.]" *Id*. at ¶ 30.

## **FLA. STAT. § 501.059**

28. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves…the playing of a recorded message when a connection is completed to a number without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(A).

29. The statute defines "telephonic sales call" as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(I).

30. A person will be defined as a "called party" if they are a "person who is the regular user of the telephone number that receives a telephonic sales call," under Fla. Stat. § 501.059(1)(A).

31. An "unsolicited telephonic sales call" is one that is made other than in direct response to the express request of the person who is called under Fla. Stat. § 501.059(4)(K).

32. At all times relevant, Plaintiff was an individual residing within the State of Florida.

33. At all times relevant, Defendant conducted business in the State of Florida.

34. On or before January of 2024, Plaintiff applied for a loan. Plaintiff did not apply for a loan from Defendant specifically, but Plaintiff suspects that his information may have been made public.

35. Plaintiff never provided Defendant with express written consent to send telemarketing calls or text messages to Plaintiff.

36. On January 3, 2024, Defendant sent Plaintiff a telemarketing text messages to Plaintiff's cellular telephone number ending in 9134 (the "9134 Number"). Defendant used the phone number (516) 774-2303 and explicitly referred to itself ("Christian… from the Underwriting Department at Lendtek") in the body of the text message:



37. Plaintiff, unsure why Defendant had specifically contacted him, ignored the text.

38. On January 4, 2024, at approximately 7:03 a.m., Defendant sent Plaintiff a second telemarketing text message:



39. Again, Plaintiff ignored this text message.

40. On January 5, 2023, Defendant sent a barrage of text messages to Plaintiff consisting of over 30 text messages. Much like the first message Plaintiff received, Defendant identified itself as "Christian…from the Underwriting Department at Lendtek" and proceeded to request information from Plaintiff for the purposes of soliciting a loan.

41. During the onslaught of text messages from Defendant, Plaintiff made repeated attempts for Defendant to cease communications as follows:



42. Notwithstanding Defendant's *six* requests for these text message solicitations to stop, Plaintiff resumed their texting campaign on Plaintiff's cellular device. On February 26, 2024, Plaintiff received the following text message:



43. Although the text message came from a different phone number, (631) 309-2972, the text message referenced "app.**lendtek**.com" (emphasis added).

44. On March 1, 2024, Plaintiff received another telemarketing solicitation from Defendant as follows:



45. In the above text message, "Richard Romero with Lendtek" sends Plaintiff a telemarketing solicitation from the same phone number indicated in the February 26, 2024, text message using the phone number (631) 309-2972.

46. Defendant's text messages were transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

47. Defendant's text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., selling Plaintiff a loan.

48. The information contained in the text message advertises Defendant's loan services to promote its business and receive business from Plaintiff.

49. Furthermore, Defendant sent out the January 4, 2024 text at approximately 7:03 a.m., in violation of the TCPA's time restrictions on telemarketing solicitation.

50. Plaintiff received the subject texts within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district.  Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

51. At no point in time did Plaintiff provide Defendant with his express written consent to be contacted using an ATDS.

52. Plaintiff is the subscriber and sole user of the 9134 Number and is financially responsible for phone service to the 9134 Number.

53. The generic nature of Defendant's duplicated text messages demonstrates that Defendant utilized an ATDS in transmitting the messages.  *See Jenkins v. LL Atlanta, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("These assertions, combined with the generic, impersonal nature of the text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.") (citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged

would be impractical without use of an ATDS); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where messages were advertisements written in an impersonal manner and sent from short code); *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1130; *Robbins v. Coca-Cola Co.*, No. 13-CV-132-IEG NLS, 2013 U.S. Dist. LEXIS 72725, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of an ATDS).

54. The text messages originated from the telephone numbers (516) 774-2303 and (631) 309-2972, numbers which upon information and belief are owned and operated by Defendant.

55. Defendant's unsolicited text messages caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages also inconvenienced Plaintiff and caused disruption to his daily life.

56. Furthermore, Plaintiff estimates that he regularly spent time checking his phone because of the numerous texts Defendant received. Additionally, Plaintiff took time to investigate Defendant and figure out how to stop the texts.

57. Moreover, Defendant's text messages took up memory on Plaintiff's cellular phone. The cumulative effect of unsolicited text messages like

Defendant's poses a real risk of ultimately rendering the phone unusable for text messaging purposes as a result of the phone's memory being taken up. *See* https://www.consumer.ftc.gov/articles/0350-text-message-spam#text (finding that text message solicitations like the ones sent by Defendant present a "triple threat" of identity theft, unwanted cell phone charges, and slower cell phone performance).

58. Defendant's text messages also can slow cell phone performance by taking up space on the recipient phone's memory. *See* https://www.consumer.ftc.gov/articles/0350-text-message-spam#text (finding that spam text messages can slow cell phone performance by taking up phone memory space).

## CLASS ALLEGATIONS

### PROPOSED CLASS

59. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

60. Plaintiff brings this case on behalf of a Class defined as follows:

> **All persons who from four years prior to the filing of this action (1) were sent a text message by or on behalf of Defendant, (2) using an automatic telephone dialing system, (3) for the purpose of soliciting Defendant's goods and services, and (4) for whom Defendant (a) did not obtain prior express written consent, or (b) had their prior express written consent revoked.**

61. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

**NUMEROSITY**

62. Upon information and belief, Defendant has placed automated and/or prerecorded calls and texts to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

63. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

**COMMON QUESTIONS OF LAW AND FACT**

64. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

> **(1)** Whether Defendant made non-emergency calls/texts to

Plaintiff's and Class members' cellular telephones using an ATDS;

(2) Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls/texts;

(3) Whether Defendant can show that they still maintained prior express written consent after Plaintiff texted "stop" and/or other communicated revocations.

(4) Whether Defendant's conduct was knowing and willful;

(5) Whether Defendant is liable for damages, and the amount of such damages; and

(6) Whether Defendant should be enjoined from such conduct in the future.

65. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

## TYPICALITY

66. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

## PROTECTING THE INTERESTS OF THE CLASS MEMBERS

67. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

## PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

68. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

69. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another

may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I

### NEGLIGENT AND WILLFUL VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(C)(5)

#### (ON BEHALF OF PLAINTIFF AND THE CLASS)

70. Plaintiff re-alleges and incorporates the foregoing paragraphs 1-70 as if fully set forth herein.

71. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—

    **(A)** an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

    **(B)** an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

    **(C)** both such actions.

72. Defendant – or third parties directed by Defendant – dialed numbers to make non-emergency telephone calls to the telephones of Plaintiff and the other members of the Class defined below.

73. These calls were made without regard to whether Plaintiff or class members were on the National Do Not Call Registry. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

74. Defendant has, therefore, violated § 227(c)(5) of the TCPA by making two or more non-emergency telephone calls to the phones of Plaintiff and the other members of the putative Class without their prior express written consent.

75. Defendant knew that it did not have prior express consent to make these calls especially since Plaintiff told Defendant he was not interested in what Defendant was offering. The violations were therefore willful or knowing.

76. As a result of Defendant's conduct and pursuant to § 227(c)(5) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation and a maximum of $1,500 in statutory damages for willful violations. Plaintiff and the class are also entitled to an injunction against future calls. *Id*.

## COUNT II

### Violations of the FTSA, Fla. Stat. § 501.059
### (On Behalf of Plaintiff and the Class)

77. Plaintiff re-alleges and incorporates the foregoing paragraphs 1-76 as if fully set forth herein.

78. Defendant—or third parties directed by Defendant—used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls and texts to the cellular telephones of Plaintiff and the other members of the Class in violation of Fla. Stat. § 501.059(8)(A).

79. Under Fla. Stat. § 501.059(1)(G), prior consent includes the signature of the called party, the telephone of the called party, as well as clear authorization to the person making or allowing the telephonic sales call to make the call. Defendant did not have prior express consent to text the cell phones of Plaintiff and the other members of the putative Class when these sales calls were made.

80. Furthermore, should consent have been deemed satisfied, Plaintiff, no less than four times, revoked any consent in place. Defendant continued to contact Plaintiff more than 15 days after revocation.

81. Defendant has, therefore, violated Fla. Stat. § 501.059(8)(A) and Fla. Stat. § 501.059(1)(G) by using an automatic telephone dialing system

to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

82. Defendant knew that it did not have prior express consent to make these texts and knew or should have known that it was using equipment that constituted an automatic telephone dialing system. The violations were therefore willful or knowing.

83. As a result of Defendant's conduct and pursuant to Fla. Stat. § 501.059(10)(B), Plaintiff and other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation.

**WHEREFORE**, Plaintiff, Erik Landers, on behalf of himself and the other members of the Class, pray for the following relief:

    a. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227 and the Florida Statute 501.059;

    b. An injunction prohibiting Defendant from using an automatic telephone dialing system to call and text message telephone numbers assigned to cellular telephones without the prior express permission of the called party;

    c. An order naming Plaintiff as the class respresentative;

d.  An order naming Plaintiff's counsel as class counsel;

e.  An award of actual and statutory damages; and

f.  Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.

Date: May 28, 2024                    **Kazerouni Law Group, APC**


                                      BY: /S/ RYAN L. MCBRIDE_____
                                      RYAN L. MCBRIDE, ESQ.
                                      TRIAL COUNSEL FOR PLAINTIFF

                                      Mohammad Kazerouni
                                      Florida State Bar No. 1034549
                                      **Kazerouni Law Group, APC**
                                      245 Fischer Ave., Suite D1
                                      Costa Mesa, CA 92626
                                      Telephone: (800) 400-6808
                                      Facsimile: (800) 520-5523
                                      mike@kazlg.com

                                      Ryan L. McBride
                                      Florida State Bar No. 1010101
                                      **Kazerouni Law Group, APC**
                                      2221 Camino Del Rio S., #101
                                      San Diego, CA 92108
                                      Telephone: (800) 400-6808
                                      Facsimile: (800) 520-5523
                                      ryan@kazlg.com